<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

</div>

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | Case No.:  14-02407-5-SWH |
| VESTIQ HOLDINGS, INC., ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| _____ ) | |

<div align="center">

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE**
**ALTERNATIVE REQUEST FOR AN ORDER DIRECTING THE TRUSTEE TO**
**RETURN MONOSOL RX, LLC'S ASSETS**

</div>

Pursuant to 11 U.S.C. §§ 362(d), 105 and Fed. R. Bankr. P. 4001, MonoSol RX, LLC

("MSRX"), by and through its counsel, Womble Carlyle Sandridge & Rice PLLC and Day

Pitney LLP, hereby requests an order (i) granting relief from the automatic stay to:  (a) permit

MSRX to continue the New Jersey state court action commenced by MSRX against Vestiq

Holdings, Inc. ("Vestiq Holdings" or the "Debtor"), Vestiq Pharmaceuticals, Inc. ("Vestiq

Pharma"), and Praelia Pharmaceuticals, Inc. ("Praelia" and collectively with the Debtor and

Vestiq Pharma, "Vestiq") in the Superior Court of New Jersey, Chancery Division, Somerset

County, styled *MonoSol RX, LLC v. Vestiq Holdings, Inc., Vestiq Pharmaceuticals, Inc., and*

*Praelia Pharmaceuticals, Inc.*, (Docket No. SOM-C-120170-14), seeking, among other things, a

writ of replevin pursuant to *N.J.S.A.* 28:50-1 et seq. and *R.* 4:61-1 of a New Drug Application #

022524 (the "NDA") owned by MSRX (the "New Jersey State Court Action"); (b) permit MSRX

to proceed in the New Jersey District Court Action (as defined below) with a hearing and further

proceeding on an Order to Show Cause relating to the wrongful removal of the New Jersey State

Court action (including discovery, the pursuit of counterclaims and/or setoffs); and (c) permit

MSRX to seek the dismissal of, and otherwise respond to and defend (including discovery, the

pursuit of counterclaims and/or setoffs) a California state court action on, among other reasons, jurisdictional grounds, commenced by the Debtor against MSRX and other defendants in the Superior Court of the State of California, County of San Francisco styled *Vestiq Holdings, Inc. v. MonoSol Rx, LLC, Keith Kendall, and Does 1 through 50,* (Case No. CGC-14-537681), seeking damages for, among other things, breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with prospective economic relations, and negligent interference with prospective economic relations (the "California State Court Action") and/or, in the alternative, (ii) directing the immediate transfer of the NDA and the NDA Property (defined below) by the Trustee to MSRX or its designee.

In support of its Motion, MSRX submits the Affidavit of Keith Kendall, the COO of MSRX (the "Kendall Affidavit"), and the Declaration of Elliot D. Ostrove, Esq. (the "Ostrove Declaration"), both of which are attached hereto and are incorporated herein, and respectfully states as follows.

## BACKGROUND

### A. The Debtor's Bankruptcy Case

1.      On April 29, 2014 (the "Petition Date"), the Debtor filed a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court of the Eastern District of North Carolina, Raleigh Division.

2.      The Debtor is a holding company.  Vestiq Pharma is a virtual pharmaceutical company engaged in the marketing, promotion, distribution, and offer-for-sale of pharmaceutical and over-the-counter drug products of third parties. Vestiq Pharma is a wholly-owned subsidiary of Vestiq Holdings.  Praelia is a virtual pharmaceutical company engaged in the

commercialization of pharmaceutical and over-the-counter drug products of third parties.  Praelia is a direct or indirect wholly-owned subsidiary of Vestiq Holdings.

3.      Upon information and belief, the Debtor, Vestiq Holdings, and its wholly-owned subsidiaries have exercised dominion and control over the property and rights that are the subject of this Motion and operated their business in an integrated, coordinated fashion, where corporate formalities, responsibilities, authority and financial affairs were inextricably interrelated and often indistinguishable.

4.      Notwithstanding legal distinctions, the Debtor has listed (i) the License and Supply Agreement and Amendments (discussed below), (ii) the Zuplenz Quality Agreement and (iii) the Forbearance Agreement (discussed below) with MSRX as executory contracts on Schedule G to its bankruptcy petition.

5.      The United States Food and Drug Administration (the "FDA") requires that every new drug intended to be sold and marketed in the United States must be sold and marketed under a New Drug Application approved by the FDA.  As discussed more fully below, MSRX transferred the NDA to Vestiq in connection with the License and Supply Agreement.

6.      Pursuant to the Order Appointing Interim Trustee and Approving Standing Bond entered on May 1, 2014, the Respondent Richard D. Sparkman was appointed as the Chapter 7 Trustee (the "Trustee").

7.      On May 7, 2014, Vestiq Pharma and Praelia, each filed voluntary bankruptcy petitions under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court of the Eastern District of North Carolina, Raleigh Division.

8.      The Trustee has indicated his intention to promptly seek an order of administrative consolidation of the three cases for convenience and efficiency.

9.      Concurrently herewith, the Movant filed separate motions seeking stay relief against Vestiq's newly filed subsidiaries upon the same cause and terms as this Motion for Stay relief incorporating this Motion, Declarations and Exhibits by reference.

B.  **The NDA, Vestiq's Default and Termination of the MSRX Agreements**

10.     The Movant is a limited liability company organized and existing under the laws of the State of Delaware with its principle place of business in Warren, New Jersey.

11.     MSRX specializes in the development and commercialization of film pharmaceutical and over-the-counter drug products.  MSRX owns patented and trade secret protected proprietary technology related to film based drug delivery systems, which are orally dissolving filmstrips ("PharmFilm") containing active pharmaceutical ingredients. *Kendall Affidavit at ¶ 3.*

12.     MSRX historically has been in the business of developing, manufacturing, and supplying PharmFilm formulations of pharmaceutical and over-the-counter drug products. MSRX seeks out partners to share in the development and commercialization of pharmaceutical products, and, in certain instances to solely market, promote, distribute, and offer for sale such pharmaceutical products. *Kendall Affidavit at ¶ 3.*

13.     In 2011, MSRX owned the rights to the NDA for a PharmFilm® product MSRX-developed, -patented, and –utilizing trade secret protected proprietary technology containing the active pharmaceutical ingredient ondansetron under the trade name Zuplenz® (the "Product"). The entity responsible for commercializing (including the marketing and sale of) a drug product is required to be the holder of record for the NDA in its name, and only the NDA holder of record may engage in these activities and bring the drug product to the market. *Kendall Affidavit at ¶¶ 3-4.*

14.     In or around June 12, 2012, MSRX and Vestiq entered into a License and Supply Agreement, as amended (the "License and Supply Agreement") pursuant to which MSRX granted Vestiq the right to commercialize MSRX's Product under the NDA in the United States and its territories and possessions.  In connection with the License and Supply Agreement, Vestiq was given the rights by MSRX, conditioned upon payment of certain consideration owed under the License and Supply Agreement, to register with the FDA as the holder of record of the NDA and to bring the Product to market.  Specifically, the License and Supply Agreement required, among other things, that certain one-time, non-refundable milestone payments totaling $4,000,000 be paid by Vestiq to MSRX upon MSRX's satisfaction of certain conditions precedent, namely: (a) transfer of the NDA to Vestiq; (b) Product launch; and (c) transfer of the marketing and branding materials relating to the Product from MSRX to Vestiq.  *Kendall Affidavit at* ¶¶ 4-5.  A copy of the License and Supply Agreement is attached to the Kendall Affidavit as **Exhibit A**.  Pursuant to the License and Supply Agreement, the parties agreed that claims relating to their business relationship should be commenced and adjudicated by New Jersey courts under New Jersey law.

15.     MSRX satisfied all of its obligations under the License and Supply Agreement. However, Vestiq failed to make the milestone payments.  Despite Vestiq's breach of the License and Supply Agreement, MSRX agreed to forebear exercising its rights and remedies arising under the License and Supply Agreement, conditioned upon the parties' entry into a First Amendment to the License and Supply Agreement, dated August 29, 2012 (the "First Amendment").  *Kendall Affidavit at* ¶¶ 5-7.  A copy of the First Amendment is attached to the Kendall Affidavit as **Exhibit B**.

16.     Vestiq again breached its agreement with MSRX when it failed to make certain payments required by the First Amendment.  Specifically, Vestiq failed to make payment of certain then-outstanding fees due to the FDA for the Product for fiscal year 2013 to ensure that the NDA remain in good standing and to enable continued commercialization of the Product, which breach MSRX permitted Vestiq to cure, including through obtaining a fee waiver from the FDA with respect to a portion of the fees, which, upon information belief, Vestiq obtained. *Kendall Affidavit at* ¶¶ 8-10.

17.     Vestiq again breached the First Amendment in March 2013 when it failed to pay milestone payments when due to MSRX.  Despite Vestiq's breach of the First Amendment, MSRX agreed to forebear exercising its rights and remedies arising under both the License and Supply Agreement and First Amendment, conditioned upon the parties' entry into a Second Amendment to the License and Supply Agreement, dated June 20, 2013 (the "Second Amendment").  *Kendall Affidavit at* ¶¶ 8-10.  A copy of the Second Amendment is attached to the Kendall Affidavit as **Exhibit C**.

18.     The Second Amendment provided for, among other things: (a) deferred payment of the outstanding milestone payments due under the License and Supply Agreement from Vestiq to MSRX through the earlier of September 1, 2013 and the date upon which Vestiq received proceeds from a purported capital raise; and (b) Vestiq ensuring that a minimum sales force for coverage of the Product be put in place immediately.  *Kendall Affidavit at* ¶ 11.

19.     Notwithstanding its obligations under the Second Amendment, Vestiq has not made any of the payments required by the Second Amendment, did not satisfy the minimum sales force coverage requirements, and in fact dismissed all of the sales force of one of its two contract sales organizations for the Product in violation of the Second Amendment, with the

32343108v1

result that the sales of the Product have declined by more than sixty percent (60%) since December 2013. Moreover, Vestiq continued to refuse to pay the outstanding fees due to the FDA as a condition of the continued sale of the Product in the market place. MSRX fulfilled its commitments under the Second Amendment. *Kendall Affidavit at* ¶ 12.

20.     Upon Vestiq's breach of the Second Amendment, MSRX notified Vestiq of MSRX's intent to terminate the License and Supply Agreement (the "First Termination Notice"). Pursuant to paragraph 11.4.3 of the License and Supply Agreement, once the License and Supply Agreement has been terminated, Vestiq must assign all rights, title, and interests in and to the NDA back to MSRX, and must cooperate with MSRX to execute and deliver any and all documents reasonably necessary to perfect MSRX's rights, title, and interests in and to the NDA. *Kendall Affidavit at* ¶ 13; a copy of the First Termination Notice is attached to the Kendall Affidavit as **Exhibit D**.

21.     On or about November 14, 2013, MSRX and Vestiq Holdings entered into an agreement (the "Forbearance Agreement"), pursuant to which MSRX agreed to forbear the exercise of its rights and remedies under the License and Supply Agreement, as amended, including termination of the License and Supply Agreement pursuant to the First Termination Notice. Nevertheless and for the fourth time, Vestiq breached its agreement with MSRX when it refused to execute and deliver a senior secured convertible note and warrant to MSRX as required by the Forbearance Agreement. Notwithstanding its inducement of MSRX to forbear, Vestiq has also repudiated the very existence of the Forbearance Agreement by belatedly challenging the authority of Vestiq's signatory to it. This is hardly surprising as the Forbearance Agreement unequivocally admits and acknowledges that MSRX has the right to terminate the License and Supply Agreement due to Vestiq's default of its obligation to make the various

payments to MSRX required thereunder as of the date of the Forbearance Agreement. *Kendall Affidavit at ¶ 14*; a copy of the Forbearance Agreement is attached to the Kendall Affidavit as **Exhibit E**.

22.     By letter dated January 10, 2014 (the "Second Termination Notice"), MSRX notified Vestiq of the immediate termination of the License and Supply Agreement because of Vestiq's breach of its obligation to timely satisfy the terms and conditions of the Forbearance Agreement and the License and Supply Agreement.  By the Second Termination Notice, MSRX also demanded that, pursuant to the requirements of the License and Supply Agreement, Vestiq immediately assign back to MSRX all rights, title, and interests in and to MSRX's NDA for the Product.  The executed Second Termination letter was delivered to Vestiq at an in-person meeting and MSRX did not retain a copy of the signed document. *Kendall Affidavit at ¶¶ 15-17*; a copy of the unexecuted Second Termination Notice is attached to the Kendall Affidavit as **Exhibit F**.

23.     By letter dated January 13, 2014, Vestiq, though its counsel, disputed MSRX's basis for the Second Termination Notice and demanded that MSRX withdraw the Second Termination Notice to permit Vestiq sufficient time to finalize a term sheet for a potential transaction involving Vestiq and the Product (the "Potential Transaction") and to provide comments to the senior secured convertible note and warrant (the "January 13, 2014 letter"). *Kendall Affidavit at ¶¶ 15-17*; a copy of the January 13, 2014 letter is attached to the Kendall Affidavit as **Exhibit G**.

24.     On January 29, 2014, MSRX received the term sheet (the "Term Sheet") for the Potential Transaction between Vestiq and its potential acquirer, which was presented to MSRX and its counsel as a "take it or leave it deal." and a copy of the Term Sheet is attached as **Exhibit**

**H.** The potential acquirer under the Term Sheet was a startup drug development company with little or no history in drug commercialization and limited capital resources. This was not acceptable to MSRX, for, among other reasons. *Kendall Affidavit* at ¶¶ 22-23.

25. Although MSRX in good faith withdrew the Second Termination Notice to permit Vestiq additional time to satisfy the latter's obligations under its several agreements with MSRX, Vestiq continued to breach the agreements. By letter dated February 2, 2014 (the "Third Termination Notice"), MSRX once again notified Vestiq of the immediate termination of the License and Supply Agreement and once again demanded immediate assignment of MSRX's NDA back to MSRX, as required by the License and Supply Agreement, in order for MSRX to minimize damages to Product and preserve the Product as a viable product in the market place. *Kendall Affidavit at* ¶¶ 18-19,  24; a copy of the Third Termination Notice is attached to the Kendall Affidavit as **Exhibit I**.

26. MSRX agreed to forbear the exercise of its rights and remedies under the License and Supply Agreement, as amended, including termination of the License and Supply Agreement on several occasions to permit Vestiq the opportunity to satisfy Vestiq's obligations to commercialize MSRX's Product under the NDA in the United States and its territories and possessions. Vestiq has breached each and every one of its obligations to MSRX and Vestiq has abdicated its obligations under the License and Supply Agreement, as amended. As a result, public access to and the viability of the Product plummets daily, resulting in substantial and irreparable injury to MSRX. *Kendall Affidavit at* ¶ 12.

27. MSRX is the lawful owner of the NDA and is clearly entitled to an assignment of the rights, title and interests in and to the NDA from Vestiq. Despite MSRX's demand, and despite Vestiq's contractual obligations to transfer the NDA to MSRX, Vestiq has refused and

continues to refuse to assign the rights, title, and interests in and to the NDA back to MSRX and has refused and continues to refuse to cooperate with MSRX to execute and deliver any and all documents reasonably necessary to perfect MSRX's rights, title, and interests in and to the NDA. Moreover, Vestiq has failed to satisfy the commitments it made to MSRX and the FDA as a holder of record of the NDA, to wit, it has failed to pay required fees to keep the FDA in good standing and has otherwise abdicated its regulatory responsibilities putting the public at risk. Consequently, replevin is the only relief that could prevent further deterioration of the value of MSRX's NDA and ultimately address the substantial harm to MSRX and the public at large. *Kendall Affidavit* at ¶¶ 12, 24.

### C. **The State Court Actions**

28.     On February 26, 2014, Vestiq initiated the California State Court Action by filing a complaint (the "California Complaint"). A copy of the California Complaint is attached to the Ostrove Declaration as **Exhibit 1**. In the California Complaint, as against MSRX, Vestiq alleges claims for breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with prospective economic relations, and negligent interference with prospective economic relations. As against both MSRX and MSRX's Chief Operating Officer Keith Kendall, Vestiq alleges claims for interference with contractual relations, defamation, and is seeking a determination of rights and duties of the parties pursuant to the License and Supply Agreement. This action remains pending and the appearance and responsive pleadings from the Movant are imminent.

29.     The Debtor and its subsidiaries, represented by prepetition legal counsel, have advised MSRX's local California counsel that such proceedings are not stayed and that legal counsel intends to proceed against the named defendants.

32343108v1

-10-

30.     The California Complaint is improper as a matter of personal jurisdiction against the Defendants, forum selection and venue, and will be vigorously contested by the Movant on the merits.  By virtue of the automatic stay, Movant (and related defendants) may not file responsive papers and otherwise fairly and fully defend the action, seek its dismissal and rebut the irresponsible and scandalous allegations of Vestiq to their prejudice, detriment and irreparable harm.  The Movant believes that the California action is nothing short of a continued stratagem to revive terminated rights under the NDA and License and Supply Agreement and to exact benefits for insiders, legal fees and a ransom for the release of the properties related to the fatally terminated NDA and the License and Supply Agreement after Vestiq management and its board shepared and bungled, illusory, failed and impossible sale prospects and opportunities to serve the interests of the estate in an orderly wind-down and termination.

31.     On March 17, 2014, MSRX initiated the New Jersey State Court Action by way of Order to Show Cause and Verified Complaint (the "New Jersey Complaint") for Replevin and Specific Performance (the "Order to Show Cause").  A copy of the New Jersey Complaint is attached to the Ostrove Declaration as **Exhibit 2** and a copy of the Memorandum of law in support of the Order to Show Cause is attached as **Exhibit 3**.  The Order to Show Cause was entered on March 24, 2014, and set forth a briefing schedule and return date of May 2, 2014.  A copy of Order to Show Cause, entered by the Honorable Edward M. Coleman, P.J.Ch. is attached to the Ostrove Declaration as **Exhibit 4**.

32.     On April 10, 2014, Vestiq wrongfully removed the New Jersey Action to the U.S. District Court, District of New Jersey, allegedly on the basis of diversity jurisdiction, and was assigned Civil Case No. 3:14-cv-02313 (the "New Jersey District Court Action").  A copy of the Notice of Removal is attached to the Ostrove Declaration as **Exhibit 5**.

33.     On April 18, 2014, MSRX filed a motion to remand the matter to the New Jersey State Court Action.  MSRX requested the District of New Jersey expedite the hearing on the motion to remand (the "Remand Hearing") in an effort to allow MSRX to proceed with its Order to Show Cause hearing.  A copy of the Notice of Motion for Remand is attached to the Ostrove Declaration as **Exhibit 6** and Memorandum of Law on in Support of Its Motion for Remand is attached to the Ostrove Declaration as **Exhibit 7**.

34.     MSRX asserted that the requisite subject matter jurisdiction over the proceeding was lacking because MSRX and the Vestiq defendants are all Delaware citizens.  It is beyond dispute that the Vestiq Defendants are all Delaware citizens because they are corporations organized and existing under the laws of the State of Delaware.  MSRX, as an LLC, is a citizen of each and every state in which its members are citizens.  Kosmos Pharma Limited, a limited interest holder in MSRX is a corporation organized and existing under the laws of the State of Delaware.  As such, MSRX is, among others, a citizen of the state of Delaware.  Although MSRX shared this authority with the Debtor, Debtor and its legal counsel has not consented to a remand of the matter.

35.     In response to MSRX's request that the motion to remand be heard on an expedited basis, the District Court of New Jersey scheduled a conference call with all counsel for April 29, 2014, at 10:00 a.m.

36.     On April 29, 2014, prior to the conference call with the District Court, and essentially two days before the Order to Show Cause hearing, the Debtor filed for bankruptcy protection.

37.    Neither the conference call with the District Court regarding MSRX's motion to remand, nor the Order to Show Cause hearing before the Superior Court of New Jersey went forward because of the bankruptcy filing.

**Immediate Harm to MSRX**

38.    As discussed above, due to the Debtor's actions, MSRX is rightfully concerned that public access to and the viability of the Product plummets daily, resulting in substantial and irreparable injury to MSRX and potentially monumental claims against the Chapter 7 estate.

39.    Additionally, the NDA holder of record is required by the FDA to administer pharmacovigilance program (the "Program") for the Product which includes, among other things, setting up a means for patients and doctors to report adverse effects. Those reports are typically made through a telephone hotline (the "Hotline") whose number is listed on the labeling package information insert (the "Product Labeling") to the Product. The NDA holder is required to make periodic reports to the FDA and to send additional reports when serious adverse events arise. Upon information and belief, neither the Debtor nor the Trustee has or can fulfill these requirements.

40.    MSRX has learned that Vestiq has shut down the Program and in particular the Hotline. This will result in a prescriber or patient reporting an adverse effect of the Product directly to the FDA instead of to the Program that should have been maintained by the Debtor. Since the Hotline number has been disconnected, the Product Labeling is now false and misleading. MSRX is extremely concerned that given Vestiq's failure to make required payments to the FDA, its general abdication of its regulatory responsibilities, and now Vestiq's bankruptcy, that the FDA could take steps to revoke the NDA and/or require a recall of the Product from the market, thereby removing the Product from the marketplace entirely or at the

very least, further damaging the Product in the marketplace.  MSRX is also concerned about

potential liability as the manufacturer.

41.     MSRX has inquired about getting control of the current Hotline number to be able

to administer the Program, or the cooperation of the Chapter 7 Trustee to revive that resource,

but has not been successful to date.  Should the Hotline number be required to change, a

corresponding and costly change to the Product Labeling must be made.  Given that MSRX is

not the NDA holder of record, MSRX does not have standing to deal with the FDA on these

matters.

## RELIEF REQUESTED

42.     MSRX requests relief from the automatic stay to pursue the New Jersey State

Court Action, the New Jersey District Court Action and to defend the California State Court

Action (collectively, the "State Court Actions"), including the assertion of any counterclaims.  In

the alternative and in the interests of justice, judicial economy and fundamental fairness, MSRX

requests that the Court make a final determination that the License and Supply Agreement was

properly terminated prior to the Petition Date, that the NDA is not property of the estate, and that

the Debtor has no further rights with respect to the NDA.  MSRX requests that the Court issue an

order directing the return of the NDA together with the appropriate regulatory documentation to

be submitted to the FDA pursuant to Title 21, Part I, Section 314 including without limitation, all

supplements thereto, and all records that are required to be kept under Title 21, Part I, Section

314.81 (the "NDA Property") to MSRX.

## Standard for Relief from Stay

43.     Section 362(d) of the Bankruptcy Code provides, in relevant part:  "On request of

a party in interest and after notice and a hearing, the court shall grant relief from the stay

provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay … for cause…." 11 U.S.C. § 362(d)(1).

44.     In any hearing concerning stay relief, the party opposing stay relief has the burden of proof on all issues other than on the issue of the debtor's equity in property.  11 U.S.C. § 362(g).  However, an initial burden of production rests upon a creditor who is seeking stay relief. *In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000) (Fox, B.J.).

45.     Because the Code provides no definition of what constitutes "cause," courts must determine when discretionary relief is appropriate on a case-by-case basis and "the court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Lee v. Anasti* (*In re Lee*), 461 Fed. Appx. 227, 231 (4th Cir. 2012) (internal citations omitted).

46.     Bankruptcy courts in the Fourth Circuit apply a three factor test to determine whether cause exists to lift the automatic stay to allow a creditor to continue pending litigation in a non-bankruptcy forum.  *In re Robbins*, 964 F.2d 342 (4th Cir. 1992).  Those factors are as follows:

- (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;

- (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and

- (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.* at 345; *see also In re Salinas,* C/A No. 06-01150-DD, 2006 Bankr. LEXIS 4523, at *10-13 (Bankr. D.S.C. Aug. 3, 2006) (applying the *Robbins* factors to a chapter 7 proceeding).

47.    The decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge. *Robbins*, 964 F.2d at 345.

48.    The *Robbins* factors weigh heavily in support of the relief requested by MSRX. Whether MSRX properly terminated the License and Supply Agreement and is entitled to the return of the NDA is entirely a state law question and should be adjudicated in the New Jersey State Court Action.[1] Adjudication by the State Court will completely and expeditiously resolve the termination and repossession issues between MSRX and the Debtor.[2] Expertise of the bankruptcy court is unnecessary and therefore, the dispute can and should be resolved in the New Jersey State Court.  Additionally, the claims raised by the Debtor in the California State Court Action do not require the expertise of the bankruptcy court.  MSRX intends to vigorously oppose the claims raised by the Debtor in the California State Court Action, and that dispute should likewise be dealt with in the California State Court which will completely resolve the claims raised by the Debtor.[3] If the California State Court determines that MSRX has some liability to the Debtor, and this liability is upheld on appeal, that asset will be property of the estate.

49.    The NDA is owned by MSRX and the License and Supply Agreement was clearly terminated pre-petition.  MSRX is entitled to an expeditious return of the NDA.  Thus, if the stay is lifted, there will be no interference with the bankruptcy case because the Debtor is not entitled

---

[1] Only if the State Court rules that the License and Supply Agreement were not properly terminated by MSRX or that MSRX has no right to the possession of the NDA, will the parties be back before the Bankruptcy Court.
[2] MSRX intends to file a proof of claim in this case for the amount of damages suffered by MSRX on account of Debtor's breaches of the License and Supply Agreement.
[3] Although the automatic stay does not apply to actions by the debtor in which the debtor is in an offensive posture and the Debtor's prepetition legal counsel advised that such proceedings are not stayed and that legal counsel intends to proceed against the named defendants in that case, MSRX is seeking an order lifting the stay with respect to the California State Court Action in an abundance of caution to ensure that it can fully defend its rights, obtain discovery and assert all of its defenses and counterclaims without violating the automatic stay.

to remain in possession of the NDA and the NDA will not be utilized in the Debtor's reorganization efforts since the Debtor is winding down its affairs through a chapter 7 proceeding. Lifting the stay to continue the State Court Actions will have no effect on the Debtor's lawful and proper business operations. In fact, the Debtor has terminated the customer telephone Hotline and appears to have no interest in the continued success of the NDA, other than possibly pursuing its claims against MSRX and the other defendants in the California State Court Action.

50.    The interests of judicial economy and the expeditious and economical determination of litigation for the parties will be served if this Court allows the State Court Actions to continue. The New Jersey State Court entered an Order to Show Cause against the Debtor and was poised to hold a hearing on the Order To Show Cause. The Debtor failed to file any opposition to the relief sought by MSRX in the New Jersey State Court Action. If the stay is lifted and the case is remanded to the State Court and the Order To Show Cause Hearing is permitted to go forward, the New Jersey State Court likely will issue a writ of replevin in favor of MSRX. Failure to lift the stay to allow the New Jersey State Court Action to proceed prevents the final resolution of the New Jersey State Court Action, and will require MSRX to incur unnecessary cost with regard to its claim for the immediate return of the NDA and its claim in these bankruptcy proceedings. Thus, modifying the stay will promote judicial economy and there will be greater interference with the bankruptcy case if the stay is not lifted because matters will have to be litigated in the bankruptcy court.

51.    The final *Robbins* factor looks at whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. In this case, there is no property to protect since the License and Supply Agreement has been

terminated, the NDA is MSRX's property, and the Debtor is not intending to reorganize. MSRX's claims, when liquidated, would in this instance be recovered in this Chapter 7 proceeding.

52.     The factors articulated in *Robbins* are not exclusive. "[I]in deciding whether 'cause' exists in a particular case, courts typically consider: (i) the prejudice that the debtor or the estate would suffer if the automatic stay were lifted; (ii) the balance of hardships facing the parties; and (iii) the probability of success on the merits of the underlying action if the stay were lifted." *In re Cooke*, No. 07-10192(BLS), 2007 WL 2102687, at *1 (Bankr. D. Del. July 13, 2007), *citing Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.),* 141 B.R. 574, 576 (Bankr. D. Del. 1992). Other courts have "identified a variety of additional factors relevant to the analysis, including: (a) whether relief would result in a partial or complete resolution of the issues; (b) lack of any connection or interference with the bankruptcy case; (c) whether the other proceeding involves the debtor as a fiduciary; (d) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (e) whether the action primarily involves third parties; and (f) the interest in judicial economy and the expeditious and economic resolution of litigation." *In re Cooke*, 2007 WL 2102687 at *1, *citing Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990). A survey of these factors also weighs heavily in favor of MSRX.

53.     MSRX will be extremely prejudiced if the automatic stay is not modified and this Court does not order the immediate return of the NDA. The Debtor's filing for bankruptcy caused a delay of the Order To Show Cause Hearing and remand of a wrongful removal to federal court. This maneuver by the Debtor left MSRX completely unprotected from potential harm to the NDA. Thus, the "balance of hurt" weighs heavily in the favor of MSRX.

**Alternatively, Relief from the Automatic Stay Should Be Granted Because the Debtor Has No Equity in the NDA or the License and Supply Agreement and the NDA and the License and Supply Agreement Are Not Necessary to an Effective Reorganization**

54.     Pursuant to 11 USC § 362(d)(2), on request of a party in interest and after notice and a hearing, the court shall grant relief from stay with respect to a stay of an act against property, if (A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization.  11 USC § 362(d)(2).

55.     MSRX is the owner of the NDA which was given to the Debtor as part of the License and Supply Agreement.  There are material monetary and non-monetary breaches of the License and Supply Agreement.  The defaults are continuing and cannot be cured.  Upon termination of the License and Supply Agreement pre-petition, the Debtor lost all rights to possession of the NDA.  As discussed above, Vestiq acknowledged that MSRX had the right to terminate the License and Supply Agreement due to Vestiq's default of its obligations in the Forbearance Agreement.  Accordingly, the Debtor does not have any equity in the NDA.

56.     Since the License and Supply Agreement was terminated pre-petition, the Debtor is not entitled to remain in possession of the NDA.  There will be no reorganization of the Debtor and therefor the NDA is not necessary to an effective reorganization.  The NDA and the License and Supply Agreement have no bona fide value to the Debtor, other than as "ransom."  The Debtor had over a year to attempt a sale of its business and was unable to effectuate it.  It is unreasonable to expect or allow the Chapter 7 estate to market or ransom assets it has wasted, and which it does not own.  Due to the Debtor's actions, the Product and the public are at risk and opportunities to reach a consensual resolution have been wasted.

**Alternatively, the Court Should Order the Immediate Return of the NDA**

57.     If the Court determines that lifting the automatic stay is not appropriate at this junction, MSRX respectfully requests that, in the alternative, the Court order that the Trustee

immediately turnover all rights, title, and interests in and to the NDA and the NDA Property to MSRX and/or find that the Debtor has no rights, title, or interests in and to the NDA for MSRX's Product, as all rights, title, and interests in and to the NDA already reside with MSRX.

58.    A Bankruptcy Court has far-reaching equitable authority to ensure the efficient and just management of a debtor's estate.  To whit, a bankruptcy court "may issue *any order*, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title . . . shall be construed to preclude the court from, *sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process*." 11 U.S.C. § 105(a).  (emphasis added).  The plain language of the statute provides that the "range of remedies available to the court to address a party's failure to comply with  provisions of the code is extremely broad." *In re Newcomer*, 416 B.R. 166, 182 (Bankr. D. Md. 2009).  "'[S]o long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights,' the authority of the Court under § 105(a) 'would include any remedy available in a private cause of action.'"  *Id.*, *quoting Bessette v. Avco. Financial Services, Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) and *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 458 (Bankr. S.D. Tex. 2008). While a Bankruptcy Court cannot create any new substantive rights, that does not preclude the enforcement of existing substantive rights.  *Rodriguez,* 396 B.R. at 458.

59.    As an expression of its equitable authority this Court may order that the Trustee reassign all rights, title, and interests that the Debtor purports to hold in the NDA back to MSRX. The case of *In re Nettie Lee Shops of Bristol, Inc.*, 49 B.R. 946 (Bankr. W.D. Va. 1985) is instructive.  In *Nettie* the plaintiff sought relief from an automatic stay pursuant to § 362 of the Bankruptcy Code, in order to permit the prosecution of a complaint in state court regarding the

improper use of a trade name. *Id.* at 946. As an initial matter the court determined that the property in question was property of the debtor's estate. *Id.* The court's analysis continued by concluding that the issue sought to be brought before the state court (i.e. the use of estate property) was a core proceeding. *Id.* at 947-48. Having determined as a matter of law that the question of "use . . . of the property" implicated the Court's full authority, it stated that:

> § 105 vests in this Court the power to issue Orders and render judgments which may be necessary and appropriate in the administration of the Debtor's case. This power includes jurisdiction to determine the appropriate right to use the trade name in question or to be prohibited from doing so by terminating the debtor's right to so do as the facts may appear upon a full hearing and consideration of the issues.

*Id.* at 948. In this case, should the Court find that a lifting of the automatic stay is not warranted, the Court should then immediately determine the appropriate right to "use" the Property. Based on the facts discussed *supra* the Court should "prohibit" Debtor's continued "use" of the NDA and the NDA Property and order a return of all rights, title, and interests to MSRX.

60.    The Court may also direct the assignment of the NDA and the NDA Property by the Trustee back to Plaintiff as a function of the good faith requirement that underpins the Bankruptcy Code. There is an expectation of good faith behavior that underlies all proceedings involving the Bankruptcy Code. *See, e.g.*, *In re Neely*, 334 B.R. 863, 872 (Bankr. S.D. Tex. 2005). This requirement of good faith "empowers the bankruptcy court to take *sua sponte* actions to prevent an abuse of the bankruptcy process." *Id.* Throughout the course of MSRX's and Vestiq's short, disastrous relationship, MSRX made frequent and generous accommodations in support of the joint venture. Notwithstanding MSRX's investments in (and patience with) Vestiq, Vestiq still seeks to use the bankruptcy process as a sword in an effort to maintain some purported rights, title, and/or interests in and to the NDA. That is, despite the fact that prior to the Debtor's filing for bankruptcy protection MSRX sent the Debtor three separate termination

32343108v1

notices causing the immediate termination of the License and Supply Agreement and three separate demands that the Debtor immediately reassign MSRX's NDA to MSRX, the Debtor has merely run MSRX in circles while purporting to maintain some kind of right, interest, and/or title to the Property, giving MSRX ultimatums and threatening bankruptcy. Significantly, the termination of the pharmacovigilance Hotline is causing irreparable harm to MSRX and MSRX is extremely concerned that public access to and the viability of the Product plummets daily, resulting in substantial and irreparable injury to MSRX.

61.     MSRX does not seek an "extreme" remedy such as a bad faith dismissal of the bankruptcy case, *see e.g. Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.*, 476 B.R. 60, 68 (E.D.N.Y. 2012). Rather, it merely requests that the Court exert its equitable authority to ensure that MSRX's property is returned to it. In this instance the Debtor has not invoked the Bankruptcy Code or this Court's authority in good faith and in so doing have held MSRX's Property hostage. The Court has great power to shape appropriate resolution of a dispute as long as it is consistent with the Code. A good faith requirement permeates the Code. *See In re Victory Constr.*, 9 B.R. 549, 558 (Bankr. C. D. Cal. 1981) (Courts of equity are "armed with the doctrine of 'good faith': the requirement that those who invoke the reorganization or rehabilitation provisions of the bankruptcy law must do so in a manner consistent with the aims and objectives of bankruptcy philosophy and policy. . . ."). As such the Court should order Trustee to return the NDA and NDA Property to MSRX.

62.     For the foregoing reasons MSRX respectfully requests that the Court take the affirmative step pursuant to its broad equitable powers, to order the Trustee to return and reassign MSRX's rights, interest, and title in and to the NDA back to MSRX.

WHEREFORE, for all of the above reasons, MSRX respectfully requests that this Court issue an Order:

A.    Lifting the automatic stay to allow the New Jersey State Court Action, the District Court Action and the California State Actions to proceed to final determination as to the return of the NDA and related property to MSRX, or

B.    In the alternative, requiring the immediate return of the NDA and the NDA Property to MSRX and grant MSRX possession of the NDA and the NDA Property;[4] and

C.    Providing such other and further relief as is just and proper under the circumstances.

Dated this 12th day of May 2014.

Respectfully submitted by:

Local Counsel

/s/ *Julie B. Pape*
Julie B. Pape (NC Bar No. 27674)
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  336-721-3715
Facsimile:  336-726-8072
Email:  Jpape@wcsr.com

Lead Counsel

/s/ *James J. Tancredi*
James J. Tancredi
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103-1212
Telephone:  860-275-0100
Facsimile:  860-275-0343
Email:  jjtancredi@daypitney.com

*Counsel for MonoSol RX, LLC*

---

[4] This motion has been filed without prejudice to the Movant's rights under 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **VESTIQ HOLDINGS, INC.,** | ) | **Case No. 14-02407-5-SWH** |
| | ) | |
| Debtor. | ) | **Chapter 7** |
| | ) | |

**NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE**
**ALTERNATIVE REQUEST FOR AN ORDER DIRECTING THE TRUSTEE TO**
**RETURN MONOSOL RX, LLC'S ASSETS**

Notice is hereby given of the Motion for Relief from the Automatic Stay or in the Alternative Request for an Order Directing the Trustee to Return Monosol RX, LLC's Assets (the "Motion") filed with this Court and served via email on the 12th day of May, 2014. This notice is given and served as of the date indicated below.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).

If you do not want the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the Motion, then, within fourteen (14) days of the date of this Notice, you or your attorney must file with the Court, pursuant to Local Rules 9013-1 and 9014-1, a written response explaining your position addressed to:

US Bankruptcy Court
Eastern District of North Carolina
300 Fayetteville Street, 2nd Floor
Raleigh, NC 27601-1799

If you mail your response to the Court for filing, you must mail it early enough so that the Court will receive it on or before the time and date stated above.

WCSR 32338465v1

You must also send a copy of any response to:

Julie B. Pape, Esq.
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem, NC 27101
Email: jpape@wcsr.com

    If you or your attorney do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motion and may enter an order granting that relief.

    This the 12th day of May, 2014.

<div style="margin-left:40%;">

Respectfully submitted,

/s/ *Julie B. Pape*
Julie B. Pape (NC State Bar No. 27674)
Womble Carlyle Sandridge & Rice, LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3715
Telefax: (336) 726-8072

*Counsel for Monosol RX, LLC*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing  NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE ALTERNATIVE REQUEST FOR AN ORDER DIRECTING THE TRUSTEE TO RETURN MONOSOL RX, LLC'S ASSETS was filed electronically in accordance with the local rules and was therefore served electronically on those entities that have properly registered for such electronic service and by United States Mail, first class for those entities not registered for electronic service (see attached Exhibit A).

Dated this 12th day of May, 2014.


/s/ Julie B. Pape
Julie B. Pape
NC State Bar No. 27674

WCSR 32338465v1

Exhibit A

**VIA REGULAR MAIL:**

Vestiq Holdings, Inc.
11010 Lake Grove Blvd., Suite 100
Box 355
Morrisville, NC  27560

**VIA ECF FILING**

Marjorie K. Lynch, Esq.
Bankruptcy Administrator
P.O. Box 3758
Wilson, NC  27895

Richard Dewitte Sparkman
Richard D. Sparkman, P.A.
PO Box 1687
Angier, NC  27501-1687

Gerald A. Jeutter, Jr.
PO Box 12585
Raleigh, NC  27605-2585

David N. Crapo, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ  07102-5310