UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: ) | | CHAPTER 7 |
| VESTIQ HOLDINGS, INC., ) | | CASE NO.: 14-02407-5-SWH |
|     Debtor ) | | |
| _____) | | |
| IN RE: ) | | CHAPTER 7 |
| VESTIQ PHARMACEUTICALS, INC., ) | | CASE NO.: 14-02644-5-SWH |
|     Debtor ) | | |
| _____) | | |
| IN RE: ) | | CHAPTER 7 |
| PRAELIA PHARMACEUTICALS, INC., ) | | CASE NO.: 14-02645-5-SWH |
|     Debtor ) | | |

**TRUSTEE'S RESPONSE TO MOTION FOR RELIEF FROM THE
AUTOMATIC STAY OR IN THE ALTERNATIVE REQUEST FOR AN ORDER DIRECTING
THE TRUSTEE TO RETURN MONOSOL RX, LLC'S ASSETS**

    NOW COMES Richard D. Sparkman, the Chapter 7 Trustee appointed in this case ("Trustee"), by and through the undersigned special counsel, pursuant to 11 U.S.C. §§362 and 105, and responds to the Motion For Relief From the Automatic Stay or in the Alternative, Request for an Order Directing the Trustee to Return Monosol RX, LLC's Assets ("Motion") and in support hereof respectfully shows the Court the following:

    1.    On April 29, 2014, a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code was filed against Vestiq Holdings, Inc. ("Holdings"), in the United States Bankruptcy Court of the Eastern District of North Carolina, Raleigh Division. Pursuant to The Order Appointing Interim Trustee and Approving Standing Bond entered on May 1, 2014, Richard D. Sparkman is the Chapter 7 Trustee appointed in this case.

    2.    On May 7, 2014, the Trustee filed separate bankruptcy proceedings for Vestiq Pharmaceuticals, Inc. ("Pharma") and Praelia Pharmaceuticals, Inc. ("Praelia"). Praelia and Pharma are wholly owned subsidiaries and affiliates of Holdings. Holdings, Pharma and Praelia are collectively referred to herein as the Debtor (the "Debtor").

    3.    Holdings, Praelia and Pharma are closely intertwined and related and have, for all practical purposes, acted as one enterprise. Holdings held the stock ownership of Praelia and Pharma. Pharma is the entity that holds all license and supply agreement rights, including the New Drug Application #022524 ("NDA"). Praelia was the operations arm of the consolidated business and was engaged in the day to day marketing, sales and regulatory compliance aspects of the business.

1

4. On May 13, 2014, the Trustee filed a Motion For Joint Administration of the three bankruptcy cases. The Court has not yet ruled on the Trustee's motion.

5. The Motion regards the ownership of the NDA. On or about June 15, 2012 Pharma and MonoSol RX LLC ("MonoSol") executed a License and Supply Agreement. The License and Supply Agreement was amended pursuant to the First Amendment to the License and Supply Agreement dated August 29, 2012 (the "First Amendment"), and pursuant to the Second Amendment and Agreement dated June 20, 2013 (the "Second Amendment"). The License and Supply Agreement, along with the First Amendment and Second Amendment are referred to herein as the "LSA". The LSA is attached to the Motion and is incorporated herein.

6. The LSA gave Pharma the exclusive right to commercialize Zuplenz in the United States. In exchange for that right, Pharma agreed to make certain payments to MonoSol, including, milestone payments and royalties.

7. Upon information and belief, Zuplenz is a cancer drug containing the active ingredient Ondansetron. Zuplenz delivers Ondansetron to a patient through orally dissolving strips. This process is beneficial to patients who have difficulty swallowing.

8. Pursuant to the LSA, MonoSol granted Pharma the exclusive right to market Zuplenz for a period of ten years. As the entity that marketed and sold Zuplenz, Pharma was required to maintain ownership of the NDA, which is approved by the United States Food and Drug Administration (the "FDA"). MonoSol transferred the NDA to Pharma in accordance with the LSA.

9. Upon information and belief, Pharma defaulted on certain payments due under the LSA.

10. On October 18, 2013 MonoSol submitted a letter to Pharma providing the required 30-day notice pursuant to Section 11.2.2 of the LSA, of its intent to terminate the LSA due to Pharma's failure to make royalty payments and the final milestone payment (the "First Termination Letter"), a copy of which is attached to the Motion and incorporated herein. The First Termination Letter also provided that MonoSol would "rescind the termination letter prior to November 17, 2013 provided that Vestiq closes a finance transaction with MonoSol[.]"

11. On November 14, 2013 Holdings and MonoSol executed an Agreement (the "Forbearance Agreement") whereby MonoSol agreed to refrain from any termination of the LSA to allow Pharma time to secure financing. The Forbearance Agreement further provided that the arrearage due to the MonoSol under the LSA would be converted to convertible senior secured debt of Holdings, and that Pharma would issue MonoSol warrants for equity of Holdings.

13. Schedule A to the Forbearance Agreement imposed a deadline of December 13, 2013 for the documentation, execution and delivery of the convertible note and warrants by the Debtor.

14. Upon information and belief, the parties agreed that MonoSol would draft the convertible note and warrants. However, upon further information and belief, MonoSol did not deliver drafts of the convertible note and warrants to the Debtor until on or about December 20, 2013.

15. Despite taking five weeks to produce the initial drafts of the convertible note and warrants (at the beginning of Christmas break, no less), MonoSol attempted to terminate the LSA pursuant to a letter hand delivered to Holdings on January 10, 2014 (the "Second Termination Letter"). A copy of the Second Termination Letter is attached to the Motion and incorporated herein.

16. The Second Termination Letter purported to terminate the LSA for two reasons: 1) because the Debtor failed "to timely execute and deliver the transactional documentation required by Schedule A" to the Forbearance Agreement; and 2) because the Debtor sold some of its inventory of Zuplenz.

17. The Debtor replied to the Second Termination Letter with a letter from its counsel dated January 13, 2014 (the "Vestiq Reply Letter"), demanding that MonoSol rescind the Second Termination Letter because there was no basis upon which to terminate the LSA. A copy of the Vestiq Reply Letter is attached to the Motion and incorporated herein.

18. MonoSol quickly withdrew the Second Termination Letter, and the Debtor shortly thereafter submitted redlined versions of the convertible note and warrants to MonoSol. Upon information and belief, MonoSol never provided any further comments to the Debtor regarding the drafting of the convertible note and warrants.

19. Upon information and belief, discussions between the parties regarding the drafts of the convertible note and warrants was put on hold while the Debtor pursued the possibility of the sale of all or substantially all of the Debtor's assets to at least two different potential buyers.

20. Upon information and belief, MonoSol, became angry and frustrated by the Debtor's discussions and negotiations with potential buyers, which led to MonoSol's third termination letter dated February 2, 2014 (the "Third Termination Letter"), a copy of which is attached to the Motion and incorporated herein.

21. The Third Termination Letter purports to terminate the LSA and the Forbearance Agreement immediately, without any notice as required by Section 11.2.2 of the LSA. The Third Termination Letter does not identify any grounds upon which the termination is based.

22. Upon information and belief, MonoSol did not send any further notice to the Debtor purporting to terminate the LSA or the Forbearance Agreement after the Third Termination Letter.

23. MonoSol's attempt to terminate the LSA and the Forbearance Agreement pursuant to the Third Termination Letter is baseless and accordingly, the Third Termination Letter is ineffective. It provides no grounds for the termination, because MonoSol had no right to terminate the LSA or the Forbearance Agreement on February 2, 2014.

24. The only two grounds for termination ever provided by MonoSol are contained in the Second Termination Letter in January 2014, to wit: the alleged failure of the Debtors to execute the convertible note and warrants; and the sale of Zuplenz inventory by Pharma.

25. The first reason is groundless. MonoSol took the lead drafting the convertible note and warrants, and did not even produce the initial drafts of the documents for the Debtor to review until seven days after December 13, 2013 execution and delivery deadline. It is preposterous to hold the Debtors in breach of the Forbearance Agreement for failing to execute documents by December 13, 2013 when MonoSol did not provide the initial drafts of the documents until December 20, 2013, which was the Friday leading into Christmas week.

26. The second reason is equally baseless. First, the Debtor's sale of Zuplenz did not violate any provision of the Forbearance Agreement. Second, upon information and belief, the Debtor informed MonoSol of its intention to sell approximately $1,000,000.00 worth of Zuplenz inventory to which MonoSol did not object.

27. The logical fallacies contained in the Second Termination Letter led MonoSol to withdraw that letter on or about January 15, 2014.

28. Given that there were no grounds for the Second Termination Letter, and given that the Second Termination Letter was withdrawn, there is no basis upon which MonoSol could terminate the LSA and Forbearance Agreement on February 2, 2014. Nothing had substantively changed between MonoSol's withdrawal of the Second Termination Letter on or about January 15, 2014 and February 2, 2014, the date of the Third Termination Letter. MonoSol was in possession of the Debtor's first proposed revisions to the drafts of the convertible note and warrants. It was incumbent upon MonoSol to move that process forward.

29. MonoSol does not allege any other purported violations of the Forbearance Agreement. MonoSol did not have the right to terminate the Forbearance Agreement and the LSA on February 2, 2014, and therefore the attempted termination is invalid and unenforceable.

30. MonoSol did not terminate either the Forbearance Agreement or the LSA after that February 2, 2014. Therefore, the Forbearance Agreement and LSA were still in effect as of

April 29, 2014, when Holdings filed for Chapter 7 protection, and when the Trustee put Pharma and Praelia into Chapter 7 bankruptcy on May 7, 2014

31. As the LSA was still in effect on the petition dates, Section 4.4 of the LSA is still valid and binding. Section 4.4 states that "[t]he NDA shall initially be held in the name of [Pharma]; <u>provided</u> <u>however</u>, the NDA may be transferred to one of [Pharma's] Affiliates." *See* D.E. 13-1, Exhibit A at § 4.4. MonoSol's rights related to the NDA are limited to the right to access, use and reference the NDA solely for the purpose of developing and obtaining regulatory approval to market and sell Zuplenz outside of the United States. *See Id*.

32. Short of the expiration of the ten year term of the LSA, MonoSol can only obtain possession and ownership of the NDA if it properly terminates the LSA pursuant to Sections 11.2.2-11.2.5 of the LSA. MonoSol has not properly terminated the LSA. Furthermore, the Forbearance Agreement, pursuant to which MonoSol agreed to forbear from exercising its rights under the LSA, remains valid and enforceable, because it has not been properly terminated either. Accordingly MonoSol does not have a right to the NDA.

33. The NDA is owned by Pharma and is an asset of the bankruptcy estate. There are no grounds upon which MonoSol is entitled to relief from the automatic stay under 11 U.S.C. § 362, and therefore the Motion must be denied.

WHEREFORE, the Trustee respectfully requests the Court deny the Motion, set this matter on for hearing, and provide for such other and further relief as this Court deems just and equitable.

This the 29th day of May 2014.

MORRIS, RUSSELL, EAGLE & WORLEY, PLLC

s/ Cindy G. Oliver
N.C. State Bar # 14258
*Special Counsel for the Trustee*
2235 Gateway Access Point, Suite 201
Raleigh, North Carolina 27607
(919) 645-4300
coliver@morrisrussell.com

5

CERTIFICATE OF SERVICE

    I, Richard D. Sparkman, do hereby certify that the foregoing **TRUSTEE'S RESPONSE TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE ALTERNATIVE REQUEST FOR AN ORDER DIRECTING THE TRUSTEE TO RETURN MONOSOL RX, LLC'S ASSETS** has been served upon each of the parties listed below by placing copies of the same in the United States mail, postage prepaid or by electronic mail as indicated below.

| | |
|---|---|
| Gerald A. Jeutter, Jr.<br>Attorney for Debtor | Via CM/ECF |
| Julie B. Pape<br>Local Counsel for Movant | Via CM/ECF |
| James J. Tancredi<br>Lead Counsel for Movant | Via CM/ECF |
| Marjorie K. Lynch<br>Bankruptcy Administrator | Via CM/ECF |

Steve Lutz
123 Trellingwood Drive
Morrisville, NC 27560

This the 29th day of May 2014.

                      MORRIS, RUSSELL, EAGLE & WORLEY, PLLC

                      s/ Cindy G. Oliver
                      N.C. State Bar # 14258
                      *Special Counsel for the Trustee*
                      2235 Gateway Access Point, Suite 201
                      Raleigh, North Carolina 27607
                      (919) 645-4300
                      coliver@morrisrussell.com