UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| VESTIQ HOLDINGS, INC., et al. | ) | CASE NO.:  14-02407-5-SWH |
|     Debtor | ) | |

### MOTION FOR APPROVAL OF A COMPROMISE AND SETTLEMENT

NOW COMES Richard D. Sparkman, the chapter 7 trustee appointed in the three above-captioned case ("Chapter 7 Trustee"), by and through the undersigned special counsel, and moves the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure as follows:

1.    This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2.    Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    On April 29, 2014, a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code was filed against Vestiq Holdings, Inc. ("Holdings"), in the United States Bankruptcy Court of the Eastern District of North Carolina, Raleigh Division.

4.    On May 7, 2014, the Trustee filed separate bankruptcy proceedings for Vestiq Pharmaceuticals, Inc. ("Pharma") and Praelia Pharmaceuticals, Inc. ("Praelia").  Praelia and Pharma are wholly owned subsidiaries and affiliates of Holdings.  Holdings, Pharma and Praelia are collectively referred to herein as the Debtor (the "Debtor").

5.    Holdings, Praelia and Pharma are closely intertwined and related and have, for all practical purposes, acted as one enterprise.  Holdings held the stock ownership of Praelia and Pharma.  Pharma is the entity that holds all license and supply agreement rights, including the New Drug Application #022524 ("NDA").  Praelia was the operations arm of the consolidated business and was engaged in the day to day marketing, sales and regulatory compliance aspects of the business.

6.    On May 13, 2014, the Trustee filed a Motion For Joint Administration of the three bankruptcy cases.  On June 17, 2014, the Court entered an order consolidating the cases for procedural purposes, and for joint administration.

7.    On May 12, 2014, MonoSol RX LLC ("MSRx") filed a Motion for Relief From The Automatic Stay Or In The Alternative Request For An Order Directing The Trustee To Return MonoSol Rx, LLC's Assets ("MSRx's Motion").  In the MSRx Motion, MSRx asserted ownership of

the NDA, resulting from the alleged termination of the License and Supply Agreement dated June 15, 2012, as amended (the "Vestiq License") pursuant to which MSRx previously conveyed to the Debtor the right to own the NDA for the purpose to commercializing and selling the corresponding drug, Zuplenz (the "Product"). The Product is an oncology drug used to mitigate nausea in cancer patients.

8. Pre-petition, MSRx and the Debtor were involved in state and federal court litigation in New Jersey and California regarding the ownership of the NDA.

9. In his response to MSRx's Motion, the Trustee disputed that the Vestiq License was terminated, and accordingly takes the position that the NDA is an asset of the bankruptcy estate.

10. However, neither MSRx, nor the Trustee, dispute the fact that failure to proceed expeditiously to sell the NDA may be detrimental to the NDA and the Product, likely resulting in deterioration in value and market degradation. Such an outcome would be financially devastating to both parties. It is in the best interest of the bankruptcy estate and MSRx to immediately find a third-party purchaser to acquire the NDA.

11. To that end, MSRx and the Trustee have agreed on settlement terms governing the marketing for sale of the NDA in the bankruptcy case (the "Marketing Plan") and the ultimate allocation of the sales proceeds between MSRx and the bankruptcy estate. Certain nuances of the Marketing Plan, including but not limited to, the time frame agreed to by MSRx and the Trustee, the minimum acceptable sales price, the maximum amount recoverable by the bankruptcy estate, and the specific allocation of sales proceeds among MSRx and the bankruptcy estate, constitute sensitive information that may chill the bidding process in the event such information was made public at this time. Such terms are agreed to between MSRx and the Trustee in the settlement agreement, a copy of which is attached hereto under seal, reviewable by the court in camera ("Settlement Agreement"). Such information shall remain confidential if and until the court enters a subsequent order approving the transfer of the NDA to a third-party purchaser in accordance with the Marketing Plan.

12. Pursuant to the Settlement Agreement, in addition to matters identified in the paragraph immediately above, MSRx and the Trustee agree as follows:

    A. MSRx and the Trustee agree to collaborate in good faith and combine forces and effort to find the appropriate and best third-party purchaser as set out in the Settlement Agreement.

    B. As part of the Marketing Plan, the Trustee will reasonably maintain the pharmacovigilence program required under the FDA as set out in the Settlement Agreement.

C.  By the scheduled date of closing of the purchase of the NDA by a third-party buyer (the "Closing"), the Trustee will use his best efforts to make available to MSRx all necessary documentation in Trustee's possession for the transfer of the NDA from Vestiq to MSRx or its designee.

D.  As part of the Marketing Plan set out in the Settlement Agreement, except as requested by MSRx, Trustee agrees to consult with MSRx in advance of taking any action relating to the Product or the NDA and Trustee shall take no independent actions which would further damage the Product or MSRx's rights in the Product or jeopardize the NDA.

E.  Upon Closing, MSRx shall waive any and all claims against the Chapter 7 Estates of Vestiq related to or connected with the Vestiq License, including but not limited to the approximately $3.6 million of claimed milestones, royalties, interest, legal fees and expenses, or the loss of profits under the Vestiq License. MSRx, however, expressly reserves any and all rights actions, indemnities, and claims related to or connected with any insurance coverage of the Debtor or the Chapter 7 Estates of Vestiq (and shall be promptly granted stay relief related to any claims thereunder).

F.  The parties agree that the deadline by which the Trustee must assume or reject the Vestiq License under the provisions of 11 U.S.C. §363(d)(1) is extended to August 12, 2014, unless it has been determined or conceded that it has been sooner terminated. The Trustee is not precluded from seeking additional extensions and MSRx is not limited or precluded from opposing the Trustee's right to seek further extensions of time for cause. Prior to the termination of the Trustee's right to assume or reject the Vestiq License, a Closing will effectively terminate the Vestiq License. MSRx's consent to any extension of time to assume or reject the Vestiq License is not intended to or shall limit or preclude (i) MSRx's claim or its right to claim that the Vestiq License was duly terminated by MSRx pre-petition, that Vestiq was in default under the License Agreement, that such defaults cannot be cured, and/or that the Vestiq License is not assignable.

G.  Trustee shall make available to MSRx in a timely manner any and all regulatory notices, inquires and/or actions of any governmental authority and notices of threatened or pending product liability claims related to the Product known to Trustee.

H.  Neither MSRx nor Trustee shall, nor shall either MSRx or Trustee permit any of its or his respective agents or representatives to, issue any press releases without the prior written approval of the other party.

I. Pursuant to the Marketing Plan set forth in the Settlement Agreement, the Trustee shall cause the product liability insurance policy of Vestiq currently in effect to be maintained until the Closing or as otherwise set forth in the Settlement Agreement and, if for any reason such insurance is not available, provide notice to MSRx thereof and the option to MSRx (but not the obligation) to obtain such insurance, or tail insurance, in the place of the Debtor's policy.

J. Nothing in the Settlement Agreement will increase any obligation of MSRx with respect to any inventory of the Product placed by or on behalf of the Debtor in distribution. Trustee agrees to use reasonable efforts to continue to fulfill purchase orders received from distributors for the Product from existing inventory until the earlier of the execution of a license agreement with a third party buyer or termination of the Vestiq License. MSRx shall have no claim against the bankruptcy estate in connection with the sale of Product by the Trustee, including but not limited to milestone payments, notwithstanding the terms of the Vestiq License.

K. Except for the possible removal of pending legal actions between MSRx and Vestiq and other defendants named therein, such litigation shall be stayed and deadlines reasonably extended. The Trustee shall advise pre-petition California counsel, in writing, to cease and desist any action inconsistent herewith. Prosecution and defense of MSRx's Motion shall also be stayed. This agreement to stay legal actions is subject to the rights of the parties to terminate the Settlement Agreement after 90 days of the date of the Settlement Agreement, unless the parties agree to extend the 90-day period.

L. Should the FDA take any action to terminate the NDA, MSRx shall be entitled to the immediate return of the NDA to MSRx and the Trustee shall sign and deliver to MSRx a NDA Transfer Notice in the name of the bankruptcy estate of the Debtor; provided, however, that nothing in this paragraph shall limit the obligations and rights of the parties under the Settlement Agreement, including rights to allocations of sales proceeds, except that MSRx (or its third party licensee) shall upon receipt of the NDA assume all of the obligations of the holder of the NDA. Transfer of the NDA from the bankruptcy estate to MSRx in this instance is for the purpose of preserving and rehabilitating the NDA for the benefit of the parties to the Settlement Agreement. In this instance, the right of the parties to terminate the Settlement Agreement becomes effective 180 days after the date of the Settlement Agreement.

M. Each of MSRx and Trustee shall cooperate in good faith with respect to the orderly wind-down of the Debtor's residual operations related to the NDA

4

and the preservation of its business records for a reasonable time, not to exceed two (2) years from the petition date of the Debtor's bankruptcy case.

N. Trustee shall make reasonably available to MSRx all of those business records (including, without limitation, electronic data) in the Trustee's possession or control, reasonably necessary to protect the Product and the NDA, and for the preservation and repair of the commercialization efforts of MSRx relating to the Product, and make reasonably available to MSRx all of the confidential information of MSRx in Trustee's possession or control.

O. Upon Closing, the pending litigation against MSRx and all defendants named therein shall be dismissed with prejudice, and appropriate releases between the parties shall be executed as set forth in the Settlement Agreement.

P. MSRx and its agents and representatives shall have no liability and the Trustee agrees to so release it and them for the good faith performance of MSRx's obligations pursuant to the Settlement Agreement or for any action by the FDA with respect to the NDA resulting from acts or failures to act by or on behalf of the Trustee with respect to the NDA or the Debtor's obligations to the FDA relating to the Product of the NDA.

Q. If the parties are unable to resolve a dispute arising out of the Settlement Agreement, they agree that they will bring the matter before the bankruptcy court for determination by the bankruptcy judge.

R. The parties acknowledge that the results achieved in an effort to re-license the Product as provided in the Settlement Agreement cannot be assured, guaranteed, or reasonably predicted as such outcome is predicated upon market factors, third party agreements, and other variables beyond the control of the parties.

S. The Trustee acknowledges that MSRx's participation in the Marketing Plan is in pursuit of the goal of the Settlement Agreement to find a third-party purchaser, and is not in violation of collusive bidding prohibitions under the Bankruptcy Code, and does not constitute tortious interference with contractual rights or business expectations of the bankruptcy estate.

T. The Trustee is authorized to enter into all reasonably and necessary documents consistent with the settlement set forth in the Settlement Agreement.

5

13. Even in the event the Trustee prevails on his objection to MSRx's Motion, resulting in an eventual court order finding that the NDA is in fact an asset of the estate, the Trustee faces the difficult challenge of curing the Debtor's defaults under the Vestiq License as a pre-requisite to assuming and assigning the Vestiq License to a third-party purchaser. This settlement reached between the parties to proceed with a joint effort to sell the NDA in accordance with the Marketing Plan is in the best interest of the bankruptcy estate.

WHEREFORE, the Trustee respectfully prays the court for the following relief:

1. Enter an order approving the compromise and settlement set forth above, along with the Settlement Agreement attached hereto, under seal.

2. For such other and further relief as this court deems just and equitable.

This the 20th day of June 2014.

MORRIS, RUSSELL, EAGLE & WORLEY, PLLC

s/ Cindy G. Oliver
N.C. State Bar # 14258
*Special Counsel for the Trustee*
2235 Gateway Access Point, Suite 201
Raleigh, North Carolina 27607
(919) 645-4300
coliver@morrisrussell.com